ALBERTO CÓRDOVA MONTES ET AL., ETC., Plaintiffs and Appellants, v. RAFAEL R. BAQUERO Y GUIDINZA, Defendant and Appellee.

No. 6358. Argued June 15, 1934.—Decided June 30, 1934.

*Arturo J. Quiñones* for appellants. *Lemuel Marqués, Jr.,* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

The instant case is an action to annul foreclosure proceedings filed by José Salas Noa in his own right, and by the heirs of Rafaela Montes, among which there appear some minors represented by their father José Salas Noa, husband of the deceased Rafaela Montes.

On May 18, 1928, José Salas Noa and his wife constituted a voluntary mortgage in favor of Rafael R. Baquero on two urban properties situated in Santurce, to secure a certain loan with interests, costs, disbursements, and attorney's fees.

On August 18, 1930, the defendant, Rafael R. Baquero, filed summary proceedings against José Salas Noa and his wife, Rafaela Montes, to recover said mortgage credit, and alleged in the initial petition, among other things, the following facts:

"That the defendant debtors have not paid the interest corresponding to the months of March, April, May, June, July, and August, 1930, and that said defendants have therefore violated the second clause of the contract of loan which provides that upon failure to pay the interest of two consecutive months all the debt will be considered to have matured, and the creditor will be in a position t orequire payment judicially.

" * * * * * * *

"That the amounts that the defendants must pay are: five thousands dollars as principal of the mortgage; two hundred and fifty dollars and two cents, amount of interest due for the months of March, April, May, June, July, and August, at $41.67 monthly; the other interest due at the rate of 10 per cent per annum until the debt is entirely paid; forty-eight dollars and twenty-six cents, amount paid by the plaintiff to cover insurance premiums; plus five hundred dollars for the costs, disbursements, and attorney's fees of the mortgage creditor; that is, a total of five thousand seven hundred and ninety-eight dollars and twenty-eight cents, plus the interest at the rate of 10 per cent per annum from August 18, 1930, until the debt is entirely paid."

Together with said initial petition they enclosed, among other documents, two receipts, that are transcribed in the complaint, executed by M. Y. Saldaña as agent in Puerto Rico of The United Firemen's Insurance Co. of Philadelphia, crediting the payment by Rafael R. Baquero on account of José Salas Noa, of the sums of $9.02 and $39.24, respectively, as premiums for policies number 11396 and 11397, that are and will be outstanding up to May 10, 1931.

The district court issued a writ demanding payment that was served by the marshal and which reads:

"In view of the complaint in this proceeding and the documents attached thereto, it is ordered that the Clerk of this Court issue a writ to the Marshal of this Court that he will demand payment from the defendants José Salas Noa and Rafaela Montes, so that within the term of thirty days from the date of the request they will tender to the plaintiff, Rafael R. Baquero, the amount of five thousand seven hundred and fifty-eight dollars and twenty-eight cents plus interest at the rate of 10 per cent per annum from August 10, 1930, until final payment on what is due on the debt of $5,000; that the sum of $5,798.28 corresponds to that of $5,000, principal of the mortgage, $250 amount of interests due corresponding to the months of March, April, May, June, July, and August, 1930, at the rate of $41.67 monthly, $48.26 paid in insurance premiums, plus $500 for costs, disbursements and attorney's fees; that all these sums are secured by the mortgage executed on the properties described in the complaint, and to notify said defendants that the properties described in said complaint shall be sold at auction if payment is

not tendered within the term specified. And in the same manner he is ordered to notify the junior lien holder Sobrinos de Ezquiaga S. en C."

The marshal's return shows that payment was demanded from debtors José Salas Noa and Rafaela Montes and that the junior lien holder creditor Sobrinos de Ezquiaga, *S. en C.* was also notified. According to the plaintiffs the distance from the town of Santurce, where the demand for payment was made, to the office of the marshal there is an approximate distance of four miles.

As the second cause of action it is alleged that from the time the defendant took possession of the foreclosed properties each one has or should have produced a rental of $35 monthly.

These are, in short, the allegations of the complaint that bear any relation to the issues raised in this appeal.

The plaintiffs request that the foreclosure proceeding filed against them by Rafael Baquero be declared null and inexistent *ab initio,* as well as all the acts incidental to said proceeding.

The defendant, Rafael Baquero, filed a demurrer to the complaint alleging that it does not set forth sufficient facts to constitute a cause of action. On March 13, 1933, the lower court sustained the demurrer and gave the plaintiffs ten days to amend the complaint, if they were in a position to do so. The plaintiffs requested judgment on the pleadings and it was given dismissing the complaint with costs, expenses, and attorney's fees to the plaintiffs.

 It is alleged in the first place that the lower court erred in considering as valid the demand for payment made to the debtors in spite of the fact that the fees required by Act No. 17 of March 11( Session Laws of 1915) had not been paid.

The appellants allege that according to Act cited above, the marshal should be paid $1 for each service and 25 cents for each mile traveled in practicing such service. It is ar-

gued that the marshal served the defendant and notified the junior lien holder and that he should have canceled $4 in stamps according to the Act since he had traveled four miles in making the service. The aforesaid officer, according to the complaint, canceled $3 in stamps and the appellants think that on this account the service is completely null, since the fee required by the said law has not been canceled.

As the lower court most properly puts it, among the classification of the fees to be paid to the marshal for his acts according to said Act No. 17 of March 11, (Session Laws of 1915) none appears for the service of a writ demanding payment in foreclosure proceedings. None the less, by analogy, it seems logical to apply the same fee required for an ordinary service of summons. The marshal demanded payment from the mortgage debtor and his wife and canceled $3 worth of internal revenue stamps. The excess thus paid is to cover the four miles allegedly traveled in effecting the service. The Law of 1915 provides for a fee of $1 for each service of summons, but is silent in regard to notifications. This is an action not covered by the fee. The marshal was not obliged to notify the subsequent creditor. The persons interested in rights that were recorded subsequently to the rights of the petitioner must be notified according to Section 171 of the Regulations for the execution of the Mortgage Law. Demand for payment and notice are two entirely different things that should not be confused. We understand that the $3 in stamps canceled by the marshal cover all the fees required by law, taking as grounds the facts alleged in the complaint.

Section 6 of the said Act of 1915 provides that each and every document or instrument required by this Act to bear an Internal Revenue Stamp or Stamps shall be null and void unless such stamps are attached thereto.

This is in the nature of a penalty imposed in order to prevent fraud against the People of Puerto Rico, who in any case would be the party really prejudiced and the one

with greater cause to complain whenever there is a failure to cancel the stamps required by the schedule. If the language of the statute is strictly followed, it apparently leaves no room for judicial interpretation. Yet a case may arise where a court officer inadvertently, without the intervention of the party, and without any intention to defraud, may fail to cancel a stamp on a given document or may cancel a smaller amount than is required by law. Let us suppose that some time after a pleading has been filed or a judicial proceeding has been terminated the officer discovers the omission and, at his request, the party covers the deficiency and cures the error, should the document be regarded as being void *ab initio* by reason of the fact that an omission has been inadvertently incurred? If the purpose of the Act is to protect the rights of the state and prevent frauds against the public treasury, it does not seem logical that once the fees have been paid, a party, who has not been prejudiced in any way, could be permitted to take advantage of the defect and allege that the judicial proceeding is void from its inception. In our opinion a judicial proceeding which is subject to said defect is not absolutely void but only voidable. An error of this nature should be curable by the party who is liable for the payment of the fee. In the instant case, an action attempting to annul summary mortgage foreclosure proceedings because the marshal failed to cancel 25 cents in internal revenue stamps for each mile traveled in effecting the service, the allegations of the complaint show that $3 worth of stamps were canceled and that this amount is sufficient to cover the duties required by law. There is no error.

█ It is further alleged that the lower court erred in not holding the summary foreclosure proceeding null and void because it did not state specifically the amounts collected as interests and because it included in the mortgage debt the premiums paid on an insurance policy which were not secured by the mortgage. We are of opinion that the error assigned by the appellants was inexistent. The Regulations for the

execution of the Mortgage Law in Section 169, last paragraph, provide among other things that the initial petition "shall specifically state the exact amounts collected by way of interest or on account of the principal of the debt, stating also the net amount of the claim which by the mere act of instituting the proceedings the creditor will contract."

In the initial petition that gave rise to the foreclosure proceeding, now under action of annulment, it was alleged that by a deed executed before Notary Public Enrique Campillo, the spouses Salas Noa and Rafaela Montes acknowledged having received from Rafael R. Baquero a loan of $5,000 which they agreed to repay on May 18, 1930. Said spouses also agreed to pay interest at the rate of 10 per cent per annum, payable monthly, upon maturity thereof, from the date of the execution of the deed to that of final payment to the creditor. In the fifth averment of the initial petition it is alleged that the debtors had failed to pay the interests due in the months of March, April, May, June, July, and August, 1930. In the tenth averment it is alleged, among other things, that the net amount due is $5,000, principal of the debt, and $250 amount of interests due in the months of March, April, May, June, July and August, 1930, and that they should pay the aforesaid and those that become due; but that it is not clearly stated whether the debtors paid the months previous to those claimed by the foreclosing creditor. That allegation is unnecessary. Otherwise a simple arithmetical computation would suffice to establish the amount claimed by the creditor, by adding the number of monthly instalments due and unpaid. The initial petition sets $250.02 as the amount of said interests at the rate of $41.67 monthly. The purpose of Section 169 of the Regulations for the execution of the Mortgage Law in requiring that the exact amount collected by way of capital and interests be specifically set forth is to inform the debtor exactly of the extent of the obligations due and unpaid, both by way of capital and interest. In the instant case the debtor, by reading the initial

petition, can ascertain exactly the exact amount claimed. The facts involved in the case of *Martorell* v. *Crédito y Ahorro Ponceño*, 42 P.R.R. 632, cited by the appellants, are not strictly reconcilable to those of the case at bar. Therein it was alleged that after the maturity of the mortgage credit the defendant made partial payments that reduce it to $902.15, adding interest to principal up to July 30, 1925, that this sum remains unpaid as well as the interest at the rate of 10 per cent per annum, as agreed, earned from July 30, 1925, to the present.

In the instant case, the foreclosure proceeding they attempt to annul, it was categorically alleged that the debtors, José Salas Noa and Rafaela Montes, owed the amount of $5,000, principal of the loan, and the interests due on the several monthly instalments at the rate of $41.67 monthly, were also exactly set forth.

As regards the payment of the insurance premiums by the creditor and the inclusion thereof as part of the loan in the foreclosure proceeding we must abide by what was stated in the mortgage deed. In the seventh clause of the said deed it is provided: "that the debtors bind themselves to insure against fire all the buildings situated on the properties previously described, each one for a sum not smaller than the part of the capital they secure, and endorsing the policy to the creditor as collateral security. The creditor reserves the right to insure, renew and pay the premiums charged by the insurance company, which payments shall increase the principal loan."

Thereinafter a clause in the deed establishes the mortgage security. In our opinion, since all the premiums paid by the creditor are to increase the principal of the loan secured by the mortgage, there was no error in including the aforesaid sum in the foreclosure proceedings.

The judgment appealed from must be affirmed.